**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN GIBSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No._____ |
| | ) | |
| | ) | |
| **CITY OF NORMANDY,** | ) | |
| *Serve Manager:* | ) | |
| 7700 Natural Bridge Rd | ) | |
| St. Louis, MO 63121 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | REQUEST FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Kevin Gibson ("Plaintiff"), by and through his attorneys, and brings this Complaint for Damages against Defendant City of Normandy ("Defendant"), and alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff is a male citizen of the United States, residing in Bridgeton, St. Louis County, Missouri.

2. Defendant is and was at all relevant times a duly organized governmental entity operating under the laws of Missouri, with its principal place of business in Normandy, St. Louis County, Missouri.

3. Defendant conducts substantial and continuous business and has substantial and numerous contacts with the State of Missouri and St. Louis County.

4. This is an employment case based upon and arising under 42 U.S.C. § 1981 ("§1981"), and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.010 *et seq.*

5. Plaintiff is an employee within the meaning of §1981, and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.020.1.

6. Defendant is an "employer" within the meaning of §1981, and the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.030.1.

7. At all relevant times Defendant has maintained and operated a place of business at 7700 Natural Bridge Road, St. Louis, St. Louis County, Missouri 63121.

8. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Missouri Eastern Division.

9. Jurisdiction and venue are proper in the Eastern District of Missouri Eastern Division pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 28 U.S.C. §1391(b).

## General Allegations Common to All Counts

10. Plaintiff (white) began working for Defendant in approximately 2012 in the Public Works Department.

11. On or about May 18, 2019, Plaintiff was driving to pick up parts for Defendant's lawn mower, when another vehicle failed to stop and collided with Plaintiff's vehicle.

12. Plaintiff went to the hospital, where he was diagnosed with cracked ribs, a concussion, neck trauma, back trauma, knee trauma, and foot trauma.

13. Plaintiff was instructed not to return to work due to his injuries and to see his primary care physician.

14. Notably, Plaintiff filed a workers' compensation claim for his injuries he sustained on or about May 18, 2019.

15. Plaintiff sought treatment from his primary care physician, who did not release Plaintiff to return to work until approximately January 2020.

16. In approximately early 2020, Plaintiff was assigned to the position of Acting Director of Public Works.

17. Also in approximately January 2020, Normandy Mayor Patrick Greene ("Mayor Greene") (black) resigned, and Maurice Hunt (black) was appointed by Defendant's City Council ("City Council") as Mayor Pro Tem ("Mayor Hunt").

18. At all relevant times, all members of City Council were black.

19. When Mayor Hunt came to the Public Works Department, he very rarely spoke with Plaintiff and Public Works Employee Jeff Misbauer ("Public Works Misbauer") (white), but frequently spoke with black public works employees.

20. Notably, Plaintiff and Public Works Misbauer were the only two (2) white employees in public works.

21. Mayor Hunt has frequently made racially offensive comments to Defendant's employees, such as: "We need to get all these white people out of here"; "Don't hire white people"; "I'm sick of all these white motherfuckers"; "We're going to get rid of all these white motherfuckers and it'll be an all-black ran city like it should be"; and "Don't bring any white people around me"; and he does not trust any of Defendant's white employees.

22. Mayor Hunt has accused white employees of spitting in his coffee on several occasions.

23. On one occasion, Mayor Hunt told Public Works Misbauer, "You don't need this job, your people can go out and get any kind of job. You can pretty much do anything that you want, I'm surprised you come in here every day."

24. Mayor Hunt also passed out to Defendant's black employees a copy of "The Willy Lynch Letter and the Making of a Slave."

3

25. Shortly after Mayor Hunt was appointed, he began to get rid of all of Defendant's white employees.

26. In approximately March 2020, Mayor Hunt terminated Plaintiff and did not give him a reason for his termination.

27. Notably, Plaintiff had no prior performance issues and had not been previously disciplined.

28. On the same day Mayor Hunt terminated Plaintiff, Mayor Hunt also terminated Public Works Misbauer.

29. After Plaintiff was terminated, Mayor Hunt assigned Plaintiff's job responsibilities to Director of Public Works Regina Fitzgerald ("Director Fitzgerald") (black).

30. Shortly after Plaintiff and Public Works Misbauer were terminated, in approximately April 2020, Mayor Hunt stated in City Council meetings that he was "so proud that the whole crew in public works is African American."

31. Mayor Hunt has also openly stated in a Public Works Department meeting that he does not want "any whites or any race other than black" working for Defendant, and he wants to fire everyone and pick and choose who he wants.

32. Likewise, shortly after Plaintiff and Public Works Misbauer were terminated, Mayor Hunt stated to black employees, "We got those white motherfuckers out of here."

33. Importantly, since Plaintiff and Public Works Misbauer were terminated, Mayor Hunt has only hired black employees for positions in the Public Works Department.

34. On or about August 10, 2020, Mayor Hunt terminated Public Works Employee Kevin Hodges ("Public Works Hodges") (black) because Public Works Hodges complained to Mayor Hunt that his derogatory statements towards white employees were racist and offensive, as Public Works Hodges is married to a white woman and has biracial children.

35. In approximately October 2020, Mayor Hunt forced Police Chief Frank Mininni ("Chief Mininni") (white) to resign.

36. On or about January 14, 2021, Defendant terminated City Clerk Sharon Warren ("Clerk Warren") (white) approximately two (2) days after she reported race discrimination to City Attorney Steven Garrett ("Attorney Garrett") (white).

37. Based on Plaintiff's information and belief, Clerk Warren's job responsibilities have been primarily assigned to a black employee, Assistant Cheryl Wallace ("Assistant Wallace").

38. On or about February 25, 2021, Housing/Police Clerk and City Hall Housekeeping Kathy Tracy ("Clerk Tracy") (white) was removed from her position as City Hall Housekeeping, and her pay and hours were decreased, approximately less than two (2) weeks after Clerk Tracy complained to Mayor Hunt that she had worked for Defendant for approximately eight (8) years and there were never any race issues before he was appointed.

39. Based on Plaintiff's information and belief, Clerk Tracy was replaced as City Hall Housekeeping by a black male employee the same day she was removed from the position.

40. On or about April 16, 2021, approximately five (5) weeks after she filed a Charge of Discrimination against Defendant, Clerk Tracy was terminated.

**<u>COUNT I</u>**
**Discrimination in violation of 42 U.S.C. §1981**

41. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

42. Plaintiff is white and thereby a member of a protected class.

43. Plaintiff was terminated by Defendant because of his race.

44. Plaintiff's race was at least a motivating factor in Defendant's decision to terminate Plaintiff.

45. At all times mentioned herein, before and after, the above-described perpetrators were

agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant; thus, making Defendant liable for said actions under the doctrine of *respondeat superior*.

46. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including race discrimination.

47. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

48. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his race, in violation of §1981.

49. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

50. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

51. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

52. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees as provided in §1981.

53. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT II**
**Violation under 42 U.S.C. §1981**
**Race Discrimination – Hostile Work Environment**

54. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

55. Plaintiff is a member of a protected class because he is white.

56. During Plaintiff's employment, Defendant, by and through its agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his race.

57. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

58. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive working environment.

59. Defendant subjected Plaintiff to severe and pervasive race discrimination, including making derogatory comments regarding his race and treating him less favorably than black

employees.

60. The actions and conduct of Defendant's employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment and thereby detrimentally affected Plaintiff.

61. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

62. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

63. Plaintiff's race was at least a motivating factor in the hostile work environment to which Defendant subjected Plaintiff.

64. Defendant failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

65. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

66. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

67. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

68. By failing to take prompt and effective remedial action, Defendant, in effect, condoned,

ratified, and/or authorized discrimination against Plaintiff.

69. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other employers from like conduct in the future.

70. Pursuant to the provisions of §1981, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, for reasonable attorneys' fees, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## <u>COUNT III</u>
**(Wrongful Discharge) Missouri Public Policy Exception to the At-Will Employment Doctrine**

71. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

72. Public policy clearly encourages employees to file workers' compensation claims for injuries by accident, arising out of and in the course of the employee's employment. *See* Mo. Rev. Stat. § 287.120.1.

73. Public policy also clearly discourages an employer or agent of the employer from discharging or discriminating against any employee for exercising their rights under the workers' compensation law. *See* Mo. Rev. Stat. § 287.780.

74. Plaintiff suffered a workplace injury, reported that injury, sought treatment for that injury,

and further exercised his rights under the Missouri Workers' Compensation Law.

75. Defendant knew Plaintiff filed a workers' compensation claim before Defendant terminated his employment.

76. Plaintiff was subsequently terminated by Defendant.

77. Plaintiff's exercise of his workers' compensation rights, as encouraged by public policy, was a motivating factor in Defendant's decision to terminate Plaintiff.

78. There is a causal connection between Plaintiff's exercise of his workers' compensation rights and Defendant's decision to retaliate against and terminate Plaintiff.

79. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine of *respondeat superior*.

80. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal retaliation against its employees.

81. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the Missouri Workers' Compensation Law.

82. As a result of Defendant's termination of Plaintiff in clear violation of public policy, Plaintiff is now suffering and will continue to suffer monetary damages, loss of wages, loss of benefits, loss of opportunity, and damages from garden variety emotional distress; all in an amount yet to be determined.

83. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized retaliation against Plaintiff.

84. Defendant's treatment of Plaintiff was conducted intentionally and with willful disregard for Plaintiff's working conditions or well-being, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff requests the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, front-pay, injunctive relief, compensatory damages, including garden variety emotional distress, punitive damages, costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in St. Louis, Missouri, on all counts and allegations of wrongful conduct alleged in this Complaint.


Respectfully Submitted,


**CORNERSTONE LAW FIRM**

By:     */s/* Lauren H. Bridge
        Brittany C. Mehl       MO 67334
        b.mehl@cornerstonefirm.com
        Lauren H. Bridge      MO 72724
        l.bridge@cornerstonefirm.com
        5821 NW 72nd Street
        Kansas City, Missouri 64151
        Telephone            (816) 581-4040
        Facsimile            (816) 741-8889
        **ATTORNEYS FOR PLAINTIFF**